Good morning. Good morning, Your Honors. Bruce Brewer for the Appellant in this case. I'm going to jump right in at the credibility issue. I'm anticipating that's going to be a concern. I quote from the Decision of the Administrative Law Judges. This is page 34, I'm sorry, page 15, volume 1 of the excerpts. The undersigned finds that the claimant's medically determinable impairments can reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. By the way, I'm going to keep you posted. We also will meet more slowly if you want to be up to date on this. Thank you for that suggestion, Your Honor, and I would like also to reserve two minutes for rebuttal. I understand that to watch this clock and keep track of that myself. I worry about starting with the claimant and what the ALJ did with the claimant was that the ALJ really said about the claimant that what the claimant said did not reflect the evidence in the record and therefore the claimant was not believable, correct? Well, so it seems to me given that that's what I understand the ALJ was really saying about the claimant, it seems to me then we have to look at what is the evidence in the record and it seems to me that your better argument might be toward Mr. Dr. Runner or Dr. Coleman or even to the extent you need to, Dr. Palmer, because they were also criticized for the same thing, that their moves did not reflect what they're now abiding to and so therefore as they go so goes the claimant. That is, I think, Your Honor, an accurate summation of the ALJ's analysis. We think that that analysis is flawed for several reasons, as pointed out in the briefs, but there is a sort of a connection between the question of the claimant's credibility and the issue of what the doctors relied on and what... Well, it isn't about what the doctors relied on. It's really about, if I read what the ALJ said, it's about whether the opinions that the doctors gave matched at all with the notes that they had. Right, Your Honor, and as we pointed out in our briefs, the, in effect, I'm referencing the Garrison case from this court, footnote 23, if the ALJ cherry-picked the record. As you said, I'm having a tough time with cherry-picking here because if I read here, the initial assessment said that your client was a very good memory, very good immediate memory, very good recent memory, and a very good remote long-term memory, and she was attentive. If I read what Dr. Rutter said in October, he said your client reported she was doing fairly well, was busy with her, with her three children who were then living with her, and he noted she was not complying with her treatment plan. And in November, he says, goes through a whole bunch of stuff that suggests that your client has done a pretty good job. She's getting better, in fact, improved compliance with the treatment plan and stabilizing moods and reduced anxiety as a result of that and her medication. She has mild moods of lability and irritability. She's not experiencing depression, self-harm, ideation, acting out, loss of impulse control. She's experiencing some insomnia, but it's helped by medication. Then he comes out and says she's totally disabled. I'm having a tough time with that. Well, in connection with that, Aaron, I think your summation of the record is accurate, but it leaves out the parts that the ALJ left out with all due respect. With all due respect, ALJ is supposed to give me what in order to sustain his opinion? What is the standard I have to look at? The legal standard is that the ALJ must assess the entire record. Obviously, the standard, Your Honor, is substantial evidence. However... Well, it's substantial evidence for clear opinions why they're not believing Dr. Rutter, and there are clear reasons cited by the ALJ. Right, but if the ALJ's analysis is derived at through the violation of other case law, then we have a prejudice case law is violated. Well, all of the case law that says that clearing, convincing, and or specific and legitimate reasoning has to be provided by the ALJ. Well, that said, it was clear. It is specific. He cites the initial assessment. He cites the October 17 note. He cites the November 9 note. That's where I got it, right from his opinion. I understand, but what the ALJ did not assess in addressing that doctor's opinion is the fact that the claimant was labeled irritable, over-reactive, had impaired concentration and sleep interruption, and that she had... And those on other occasions. She had those. This is an excerpt 648, Your Honor, in connection with the chart note. As I understand it, in connection with the chart note that the ALJ relied on in undermining Dr. Rutter, those other findings were provided by Dr. Rutter that were not mentioned by the ALJ that would be supportive of Dr. Rutter's opinion. In a similar vein... Are you going to do with the idea that the ALJ says, no, I'm not believing what Dr. Rutter said because he reviewed the impairment questionnaire with his client and just put down what she told him to put? Well, Your Honor, I would make a difference in terms of your interpretation of the ALJ's reasoning. But he said he reviewed the impairment questionnaire with the petitioner saying to himself, or what ran out to me, is therefore he was not giving his own impressions clinical or his own impressions diagnostic. He was just giving subjective interpretation of the claimant, of the client. But in fact, the language that the ALJ used was not that the doctor was behaving as an advocate, but rather that the doctor was not fully objective, which is clear violation of many different cases that says that the professional physician's observations are credible on an incredible basis for the physician's opinion. So long as they are not based more on the subjective statements of the claimant. So... Yeah, I hear you on that. What am I going to do with the third reason? We've had one reason. What he's recommended is nothing like his notes. We've had another reason. He reviewed the impairment questionnaire with the petitioner. And last, his opinion is contradicted by the We should be honored that the opinion of Dr. Palmer is actually disabling. He opines that the claimant has a poor ability to accept instruction from supervisors. That's essentially a disabling limitation. The other two physicians you mentioned were state agency, non-examined physicians. And it's our view, under the circumstances, their opinions don't constitute substantial evidence. Well, they do concentrate, they do match substantial evidence if you don't have to give any weight to the opinion of Dr. Brunner. Isn't that true? No, I think we look at their opinions. If you give no weight to the treating physician, then you don't have to use the treating physician's analysis in the RFC. You don't have to review the treating physician's analysis. You said I'm giving little weight to it. So then you can look at other opinions and give great weight to them, which he did give weight to Palmer, Billick, and Klein. Well, Your Honor, the assessment of whether the opinions of the non-examined physicians constitute substantial evidence is, I believe, an assessment that takes place independent of the weight given to the treating physician's opinion. If you say the treating physician gets little weight, then you've got to have somebody upon which to rely in making your determination. And that's why he gave Palmer at least partially great weight, and he gave Billick and Klein great weight, so that he could rely on what they said. Well, Your Honor, we also have Dr. Cowlman in the file as well. I understand. We haven't found Dr. Cowlman, yes, and he wasn't there. Pardon me, we're taking up extra time. We'll give you a minute, sir. Okay, thank you, Your Honor. Good morning, Your Honor. Sheetmon, on behalf of the Commissioner of Social Security. I completely agree, obviously, with Judge Smith's analysis of this case. I have a question to you, and I'm just trying to get to the bottom line. I might give it to you, just so I can agree with you. Your Honor, I've appeared before, Your Honor, and I know not to take too much time, too much the way you characterize this record, and how the LJ analyzed the evidence in this case. What were your friends' suggestions that the LJ cherry-picked among the records and didn't give sufficient weight to those findings which were favorable to the, or supportive of the disability? Well, I'm going to disagree with that. I believe it's actually the opposing counsel which is cherry-picking the record, because the LJ didn't just give a summary. When the LJ was summarizing the evidence, she did not just give a summary of the glowing, unremarkable findings. She did acknowledge that there were negative findings during the examinations. It's just that they did not overcome rather overwhelming, unremarkable clinical findings on mental status examination. And so, when you look at the LJ's decision, we're looking at, excuse me, pages 34 and 35 of the administrative record, pages 15 and 16 of the excerpts record. There's four analyses. Since I'm not going to be saving, I'm just getting down into the paper rather than into the microphone. I apologize, Your Honor. So, the record sites are page 34 and 35 of the administrative record, and 15 and 16 of the excerpts record. And so, on those pages, you have an analysis by the ALJ that's summarizing Dr. Waters' records, and it does include some of the more negative findings. So, the fact that the claimant was endorsed mild mood, lability, and irritability, that she was talking about that she had hallucinations, that she had symptoms related to depression. So, the ALJ was juxtaposing those session of symptoms within the administrative records within the rather unremarkable mental status examination findings. So, I'm going to disagree that the ALJ was somehow ignoring any of the negative documentation in the report records. I would also just like to point out that I was a little surprised that it wasn't until she started to address credibility in this case, given that they've never challenged credibility finding. They didn't challenge the district court. They didn't challenge her opening brief. That issue is completely waived, and it's the government's position that they have conceded that the claimant is not a credible person when she describes her mental status symptoms. And so, to the extent that these doctors lied heavily on her unreliable subjective statements, the ALJ, under the circuit decisions of the circuit, is entitled to discount those opinions because those opinions are not based on objective clinical mental status findings. They are based on the claimant's unreliable description of her symptoms. We just barely had a 28-J letter in this case. Did you get a copy? I did see that, yes. And it was interesting to me that the petitioner argues under Trevisio, I guess was the best case, that the opinions of Rutter, Coleman, and Palmer were uncontradicted because the ALJ did not make some express finding that they were contradicted. Do you have a response to that? Well, my first response is that that's actually now contradictory. The claimant has now made self-contradictory statements about the opinions because, I believe, in the opening and reply briefs, the claimant actually acknowledges that those opinions are in conflict with one another. So, I think it's a little disingenuous. So, the client claimed and or conceded. Yes, I think it's a little disingenuous. Now, I'm saying in a published case, a newly published case, to also change through their theory of the case. But secondly, I do think that that justifies kind of the sense. You know, if you're looking at two opinions, you can tell whether they conflict with one another. I mean, I've heard if you take what Plank is saying about Trevisio to this logical conclusion, then you can have one doctor assess a claimant with less than secondary RFC and another doctor assess a claimant with RFC because simply because the ALJ didn't affirmatively say these opinions expressly conflict with one another, then all of them prefer the same opinion. Oh, by the way, we don't go with the opinion that the judge's claim is more functional, has more functional capacity. We automatically are just going to defer to the appeal in less functional capacity. That justifies a comment, sir. That's your honor. And I feel that the Trevisio decision actually contains several misrepresentations of the circuit's precedent. And I would also caution this Court that the decision just came out of the Commissioner opportunity to file a petition for re-hearing if it chooses within 45 to 60 days. I'm not saying that the Commissioner will, but we are concerned about employing a decision that's being contrary to circuit precedent. Well, I guess I looked at Trevisio and I was going to ask you, does it necessarily follow that the panel cannot rely on obvious contradictions between physician and medical opinions in determining what standard to apply? It seems to be that vehicle there, but I'm not really sure it even says that. Right. I mean, I think this Court is quite capable of looking at evidence and seeing that it conflicts with one another. Obviously, we have conflicting medical opinions in the case for you today, and the ALJ properly evaluated the conflicting evidence, fully explaining the reasons why she afforded the weight to individual opinions that she did, and the RSC supported by the opinions that she felt that were consistent with the record and had the necessary objective support, and it did not rely on the claimant's uncredible testimony and statements about her mental symptoms. And if this Court has no further questions, we would ask that you affirm it. Thank you very much. Would you like to give a minute or a couple? As I was saying initially, I think the case is much more complex and nuanced than simply the idea that the claimant's not credible and the doctors relied on the claimant, and therefore we discount the doctors because they relied on a non-credible claimant. Because when you look at how the ALJ, and I didn't write the briefs, my co-counsel wrote the briefs, when you look at the language that the ALJ used, he found that, in fact, her symptoms were supported by the record in this case, just that they weren't entirely supported. But he made no specification about what symptoms were not supported. What the ALJ was saying is, even if you've got some things that are going wrong, you've got a lot of things that are going right in your notes, and therefore it doesn't seem to me that it's consistent to say you're disabled, you're experiencing severe symptoms, and you have a GAF of 41, and you have a poor memory, when you've got all these notes that suggest the opposite. The ALJ, Your Honor, did exactly what you just described, and it violates the case law. It's called the ALJ playing doctor, and the ALJ is not a doctor. The ALJ had to play doctor. All the ALJ had to do was decide whether it was going to give weight to what the treating physician said or not. Well, in the whole sort of menu of symptoms that... I mean, if this were a case where every doctor in the world said the same thing, you might have a better argument, because we have a bipolar disorder, and it's a different kind of a case, but it isn't a case where every treatment provider, every doctor said the same thing. It's a case where we have a treatment provider who has notes which say one thing, and then he gives an opinion which is far different than that, and Kalman does the same thing. Well, Your Honor, I suppose, with all due respect, I don't fully agree with the characterization that the doctor's opinion is inconsistent with the notes. What I think happened here is that the ALJ selected the aspects of the appointment's functionality that were good. There were some aspects that were good. There were some aspects that were poor. The psychiatrist, the MD psychiatrist, in his professional judgment and opinion, relied on the aspects of her symptoms that were poor in support of his opinion. The ALJ essentially cherry-picked the record, pulled out the evidence of functionality, and undermined the physician's opinion, and as such, effectively supplanted the doctor's expertise. Two more points, and I know I'm way over here, Your Honor. Cervizio came out yesterday, it appears, or on the 10th, or two days ago, it appears from the plain language of that decision that in the absence of an express finding by the ALJ of conflict between the GDS and the conflict at all, there needs to be an express finding of conflict or the clear and convincing standard for reviewing these things. I'd have to read the opinion as you do in order to suggest that, but even then, as I told you, I read it pretty carefully, and I'm not sure you can say that Cervizio says if there is conflict in the record, and it's an absolute conflict, then there might even be clear and convincing evidence of a conflict. But our position in the case, Your Honor, is that regardless of whether you apply in the assessment of the opinions of the physicians this specific and legitimate standard or the clear and convincing standard, the ALJ's analysis fails to pass the
judges: Bea, N.R. Smith, Robreno